IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL O. JOHN, | ) |
| Plaintiff, | ) |
| v. | ) Case No: 10 C 4029 |
| CAROLYN COLVIN, | ) Magistrate Judge Jeffrey Cole |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

The plaintiff, Michael John, seeks review of the final decision of the Commissioner ("Commissioner") of the Social Security Administration ("Agency") denying his applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 423(d)(2), and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). Mr. John asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

**I.
PROCEDURAL HISTORY**

Mr. John applied for disability benefits on February 27, 2007, alleging that he had been disabled since January 25, 2002, due to attention deficit disorder and fetal alcohol syndrome. (R. 81-87, 128). His application was denied initially and upon reconsideration. (R. 32-35, 45-49, 53-60). Mr. John continued pursuit of his claim by filing a timely request for an administrative hearing. (R. 63). On May 6, 2009, an administrative law judge ("ALJ") convened a hearing at which Mr. John, represented by counsel, appeared and testified. (R. 12-31). On May 26, 2009, the ALJ issued a decision finding that Mr.

John was not disabled because he did not have a severe impairment. (R. 25-36). This became the final decision of the Commissioner when the Appeals Council denied Mr. John' request for review of the decision on May 7, 2010. (R. 1-4). *See* 20 C.F.R. §§ 404.955; 404.981. Mr. John has appealed that decision to the federal district court under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c).

## II.
## EVIDENCE OF RECORD

### A.
### Vocational Evidence

Mr. John was born on August 28, 1974, making him thirty-four years old at the time of the ALJ's decision. (R. 81). He made it through the twelfth grade, and had to take special education courses in high school. (R. 132). His work history consists of a series of short-lived, simple, minimum-wage jobs, such as laborer, utility clerk, or assembly line worker. (R. 129). He says he lost these jobs because he could not remember sequences of instructions and would invariably get fired. (R. 128). Mr. John last worked in October of 2006, when the month-long, temporary position he had on an assembly line ended. (R. 129).

### B.
### Medical Evidence

Mr. John's medical records are very sparse. There is a report that a Dr. Kay phoned into the disability determination office on March 21, 2007. Dr. Kay had last seen Mr. John on May 23, 2005. Mr. John asked him if he could get back on Ritalin – he hadn't taken it since 2002. He also told the doctor that since his father died in 2003, he had no guidance. He lost his job in retail and his employer told him he would hire him

2

back if he went on medication. Mr. John also complained about short-term memory loss. Dr. Kay noted that Mr. John showed no signs of depression. He did, however, need reminders to shower and shave. He also had a bad attendance record when he worked. (R. 190).

Mr. John had a consultative examination with psychologist Barbara Sherman on April 24, 2007. His sister took him to the examination because he had lost his license after an accident. (R. 1920). He lived in his sister's basement and she was his sole means of support. (R. 193). Both his parents were dead. Mr. John explained that his mother abused alcohol and he had been born prematurely. (R. 193). As for his drinking habits, he allowed that he drank a six-pack of beer about once a month. (R. 193). He had no friends other that a few people from places he worked in the past. He kept to himself, watching TV in the basement or going to the library to use the internet. (R. 193). He had difficulty focusing on anything, including TV. His sister wrote out instructions for him to do laundry but he was unable to follow them. (R. 194). He forgot to bathe or shave sometimes. He did no household chores. He was unable to manage money. His sister took him shopping. (R. 194). Mr. John reported that he had previously taken Ritalin but found it uneffective. (R. 196).

Dr. Sherman noted that Mr. John's clothing was dirty and he was unwashed and unshaven. (R. 194). He had limited attention and could repeat only 5 digits forward and 2 backward. (R. 195). He couldn't name the months of the year backward. (R. 195). His memory was variable and his judgment was impaired. (R. 195). He need to use his fingers to count. (R. 195). Dr. Sherman diagnosed a cognitive disorder, Asperger's

3

syndrome, alcohol abuse, and adjustment disorder with mixed depression and anxiety. R. 196).

On May 14, 2007, state agency psychologist Carl Hermsmeyer reviewed the medical record, such as it was, on behalf of the Social Security Administration. He noted the diagnoses of cognitive disorder, adjustment disorder with anxiety and depression, and Asperger's syndrome. (R. 199, 201, 206-07). He felt Mr. John was moderately limited in his ability to maintain social functioning and maintain concentration, persistence and pace. (R. 208). He was also mildly restricted in activities of daily living. (R. 208). Although Mr. John's impairments did not meet the listings, Dr. Hermsmeyer concluded they are "more than non-severe." (R. 210).

## C.
## Administrative Hearing Testimony

At the hearing, Mr. John testified that, since November of 2008, he had been working about 25 hours per week as a cart attendant at Target. (R. 18). Before that, he thought he last worked in telemarketing in 2006. (R. 19). The job was full time, but lasted only 3 months. (R. 19). He also did some side jobs as an electrician a few weekends, and had another brief telemarketing position in 2005 or 2006. (R. 20). Mr. John explained that he forgot the steps for doing tasks at his jobs, and that this would happen repeatedly until he was fired. (R. 21).

Mr. John said that, at one telemarketing job, he couldn't make any sales, so he quit. He was at the bottom of the company's performance list and figured he'd be fired anyway. (R. 25). He lost the other telemarketing position because he was unable to follow the script. (R. 26). At Target, he was having some tardiness issues because he couldn't remember to punch in/out. (R. 27). He was being given one more chance

4

before he would be fired. (R. 27-28). Mr. John testified that he couldn't afford medication – like Ritalin – for his ADHD. (R. 30). The psychiatrist was too expensive as well. (R. 30).

## D.
## ALJ's Decision

The ALJ began his analysis by saying that "[a]rguably, denial of this claim could occur at the first step of the sequential evaluation." (R. 41) He noted that, from November 2008 through May 2009, Mr. John engaged in substantial gainful activity, working at Target. (R. 41). He also earned $8948 in 2005, and $1320 in 2006. (R. 41). But the ALJ then said the record was "not clear that the claimant did not return to [substantial gainful activity] within 12 months" and resolved the issue in Mr. John's favor. (R. 41).

The ALJ moved on to consider the limited medical evidence. He referred to the contact from Mr. John's former psychiatrist, noting that Mr. John had asked for Ritalin and indicated that his employer would take him back if he were on medication to control his ADHD. (R. 42). The ALJ also noted that Mr. John said he could no longer afford Ritalin or a psychiatrist. (R. 42). The ALJ discussed the results of Mr. John's consultative exam, touching on his fetal alcohol syndrome and his special education classes in school. (R. 42). He mentioned Mr. John's hygiene deficiencies, and deficits in attention, concentration, memory, reasoning, and judgment. (R. 42). The ALJ acknowledged the psychologist's diagnoses of cognitive disorder, Asperger syndrome, fetal alcohol syndrome, and adjustment disorder with mixed depression. (R. 42). But, the ALJ added that Mr. John "had not received any treatment for his impairment since at

5

least 2003, and therefore, the examination evaluated an untreated impairment. (R. 42). The ALJ did not mention Dr. Hermsmeyer's review.

The ALJ then stated that Mr. John had been working at Target, earning about $928 a month. (R. 42). There was no indication that his employer was making special accommodations for him. (R. 43). He also had been applying for jobs, but just wasn't getting hired. (R. 42). The ALJ acknowledged that Mr. John had tardiness issues at Target. (R. 42). He then noted that Mr. John hadn't taken Ritalin since 2002, and that there was nothing in the record to indicate that the medication would alleviate his symptoms. (R. 43). The ALJ concluded that the record failed to disclose any significant limitation on Mr. John's mental ability to do basic work. (R. 43). Accordingly, the ALJ found that Mr. John did not have a severe impairment and was not disabled under the Act. (R. 43-44).

## IV.
## DISCUSSION

### A.
### Standard of Review

The applicable standard of review of the Commissioner's decision is a familiar one. The court must affirm the decision if it is supported by substantial evidence. 42 U.S.C. §§ 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010)(*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The court may not reweigh the evidence, or substitute its judgment for that of the ALJ. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Where conflicting evidence would allow reasonable minds to differ as to whether the claimant

6

is disabled, it is the ALJ's responsibility to resolve those conflicts. *Elder v. Astrue*, 529 F.3d 408, (7th Cir. 2008); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Conclusions of law are not entitled to such deference, however, so where the Commissioner commits an error of law, the court must reverse the decision regardless of the volume of evidence supporting the factual findings. *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007).

While the standard of review is deferential, the court cannot act as a mere "rubber stamp" for the Commissioner's decision. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). An ALJ is required to "minimally articulate" the reasons for his decision. *Berger*, 516 F.3d at 544; *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Although the ALJ need not address every piece of evidence, the ALJ cannot limit his discussion to only that evidence that supports his ultimate conclusion. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ's decision must allow the court to assess the validity of his findings and afford the claimant a meaningful judicial review. *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009). The Seventh Circuit calls this building a "logical bridge" between the evidence and the ALJ's conclusion. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

## B.
## Five-Step Sequential Analysis

The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1) is the plaintiff currently unemployed;

2) does the plaintiff have a severe impairment;

7

3) does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4) is the plaintiff unable to perform his past relevant work; and

5) is the plaintiff unable to perform any other work in the national economy?

20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-13 (7th Cir. 2009); *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005). An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. 20 C.F.R. §416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan,* 892 F.2d 43, 44 (7th Cir. 1990). A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. §404.1520; *Stein*, 892 F.2d at 44. The claimant bears the burden of proof through step four; if it is met, the burden shifts to the Commissioner at step five. *Briscoe*, 425 F.3d at 352, *Brewer v. Chater,* 103 F.3d 1384, 1391 (7th Cir. 1997).

## C.
## Analysis

An impairment or combination of impairments is severe if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include, among other things: walking, standing, sitting, lifting, pushing, reaching, carrying, handling; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). An impairment is not severe if the "medical evidence establishes only a slight abnormality or a combination of slight abnormalities

which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . ." Social Security Ruling ("SSR") 85-28, 1985 WL 56856, *3; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010).

Here, the ALJ concluded that "[t]he record did not disclose any significant limitation in the mental ability to do basic work activity." (R. 43). But between the ALJ's "significant limitation" and the law's "slight abnormality" with "no more than a minimal effect," there is a lot of room. A person with no significant limitation could still have more than a slight abnormality that has more than a minimal effect. In other words, by requiring that Mr. John show he had a significant limitation in order to establish a severe impairment, the ALJ was demanding more than the law requires. Mr. John only had to show he had more than a slight abnormality with no more than a minimal effect on his ability to work.

There certainly was evidence of that in the record, sparse at is was. The consultative psychologists stated that Mr. John was limited in a number of areas, including attentional focus, sustained concentration, memory, judgment, and cognitive thinking. These, she said, were "*extensive* deficits." (R. 196). As such, they were certainly more than slight abnormalities, and they had more than just a minimal effect on Mr. John's capacity for work. Moreover, when the state disability agency's own psychologist reviewed the consultative exam, it was his opinion that Mr. John's impairment were "more than non-severe" – they were severe. (R. 210, 214).

The ALJ didn't have to accept either doctor's opinion, of course. But he had to explain why. The ALJ was required to determine the weight Dr. Sherman's opinion

9

deserved by examining how well she supported and explained her opinion, whether her opinion was consistent with the record, whether she is a specialist, and any other factor of which the ALJ was aware. *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). He couldn't just implicitly discard it. The same goes for Dr. Hermsmeyer's opinion. The Commissioner's own regulations require that an ALJ not ignore a reviewing doctor's opinion; he must explain the weight he accords it. *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011).

At least the ALJ summarized Dr. Sherman's opinion; he didn't even mention Dr. Hermsmeyer's opinion. Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence. *Arnett v. Astrue*, 676 F.3d 586, 591-92 (7th Cir. 2012); *Denton v. Astrue,* 596 F.3d 419, 425 (7th Cir. 2010); *Simila,* 573 F.3d at 516. When an ALJ says there is nothing in the record that suggest a claimant has a severe impairment, and there is an opinion saying specifically that he does, that's ignoring a contrary line of evidence. There were only three pieces of medical evidence in the record, but the ALJ ignored a third of them.

The Commissioner argues that the ALJ was free to reject the medical evidence because Mr. John had a part-time job retrieving shopping carts at Target at the time of the administrative hearing. Perhaps, but the ALJ didn't give that as a reason for his treatment of the medical evidence in his opinion. Review of an ALJ's disability determination is limited to the reasoning the ALJ provides, regardless of how compelling the Commissioner's lawyers' arguments might be. *Jelinek v. Astrue*, 662 F.3d 805, 812

10

(7th Cir. 2011). The ALJ mentioned the fact that Mr. John was working part-time, but didn't say he was rejecting the only two medical opinions in the record because of it.

Beyond that, "the fact that someone is employed is not proof positive that he is not disabled, for he may be desperate and exerting himself beyond his capacity, or his employer may be lax or altruistic." *Wilder v. Chater*, 64 F.3d 335, 337-38 (7th Cir. 1995). The ALJ said there was "no indication of a subsidy by the employer or that the employer did not consider his work to be worth the amount paid." (R. 43). Perhaps the ALJ was driving at the fact that Target was not being lax or altruistic or making accommodations for Mr. John. But when the ALJ asked Mr. John whether he was having trouble at work, Mr. John explained that his inability to remember things and follow instructions had led to tardiness issues. He had been written up for it and would be fired the very next time it happened. As he explained earlier in his testimony, this had been his work history his whole life.

So this case must be remanded for the ALJ to address the medical evidence he either didn't assess or ignored. Mr. John also asks that the remand be to a different ALJ. Courts can suggest but cannot require a change of administrative law judges, *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); *Sarchet v. Chater,* 78 F.3d 305, 309 (7th Cir.1996); *Travis v. Sullivan,* 985 F.2d 919, 924 (7th Cir.1993), unless the administrative law judge has demonstrated a degree of bias which would disqualify him as a matter of due process from further participation in the litigation. *United States v. Thouvenot, Wade & Moerschen, Inc*., 596 F.3d 378, 386 (7th Cir. 2010). Here, Mr. John offers no reason why he thinks a new ALJ should take over, let alone point to any bias. The ALJ made a mistake or two. All judges at every level make mistakes, but mistakes

11

are not a basis for ordering a case be reassigned. *Fujisawa Pharmaceutical Co., Ltd. v. Kapoor,* 115 F.3d 1332, 1339 (7th Cir.1997).

## V.
## CONCLUSION

The plaintiff's motion for summary judgment or remand [Dkt. #38] is GRANTED, and the Commissioner's motion for summary judgment is DENIED.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/1/13